CATHERINE DELANEY and Johanna Colbert, Respondents, v. STATE OF NORTH DAKOTA and John Steen, as Treasurer of the State of North Dakota, Appellants.

(174 N. W. 290.)

**Actions against state — title to property of decedent — statute construed.**

1. Section 8175, Compiled Laws of 1913, authorizes actions to be brought against the state, where title to property is involved.

**Escheat — district court proper place for commencement of suit.**

2. Section 5760, Compiled Laws of 1913, which provides that, if there is no one capable of succeeding to property upon the death of a decedent and the title fails from a defect of heirs, the property escheats to the state, and authorizes an action for the recovery of the same in the district court, gives an exclusive remedy to perfect an escheat.

**Escheat — state does not acquire property by succession or as last heir.**

3. When property escheats to the state through failure of title on account of the nonexistence of a person capable of succeeding to the estate of a decedent, the state does not take the property by succession or as the last heir of the decedent.

**Escheat — county court has no jurisdiction to determine escheat.**

4. The county court has no jurisdiction to determine escheats.

**Escheat — county court has no jurisdiction to settle question that state is only heir.**

5. A finding by a county court in a decree of distribution, that the state "is the only heir" of a deceased, accompanied by a direction to the administrator to turn over the property to the state treasurer, followed by compliance, does not constitute an authorized adjudication of an escheat sufficient to vest title in the state.

**Escheat — right of claimants to property not under jurisdiction of county court.**

> 6. Where, in the course of an action of escheat in the district court, it becomes necessary to determine whether or not claimants are entitled to succeed to the property, the determination of such question is not an exercise of probate jurisdiction within the meaning of § 111 of the Constitution, which vests exclusive probate jurisdiction in county courts.

Opinion filed May 9, 1919.

Appeal from the District Court of Benson County, *C. W. Buttz*, J. Affirmed.

*William Langer*, Attorney General, *H. A. Bronson*, Assistant Attorney General, and *George K. Foster*, Assistant Attorney General, for appellants.

"Property escheats when. All property, real and personal, within the limits of this state, which does not belong to any person or to the United States, belongs to the state. Whenever the title of any property fails for want of heirs or next of kin, it reverts to the state." Comp. Laws 1913, § 9.

"The heirs of a deceased person have no vested interest in the property of a deceased person." Strauss v. State, 36 N. D. 601, 162 N. W. 908.

At best the heirs of a deceased person have only permission on the part of the state, upon complying with certain conditions, within certain time, to receive certain portions of the property of the deceased. Ibid.

2. Upon the death of a person intestate with defect of heirs his estate *eo instanti*, vests in the state of North Dakota. N. D. Comp. Laws 1913, § 5760; State v. Reeder, 5 Neb. 205.

3. No proceedings are necessary to effect an escheat where the owner dies intestate without leaving any inheritable blood. 4 Kent, Com. 424; State v. Reeder, 5 Neb. 203; 1 Bland, Ch. 299; O'Hanlin v. Den, 20 N. J. L. 31; Den ex dem. Van Kleek v. O'Hanlon, 21 N. J. L. 582; McCaughal v. Ryan, 27 Barb. 376; Ettenheimer v. Hefferman, 66 Barb. 374; Doe ex dem. Blount v. Horniblea, 3 N. C. (2 Hayw.) 37; Hinkel v. Shadden, 2 Swan, 46; Puckett v. State, 1 Sneed, 355; State v. Goldberg, 113 Tenn. 298, 86 S. W. 717; Ellis v. State, 3 Tex. Civ. App.

170, 21 S. W. 66, 24 S. W. 660; Sands v. Lynham, 27 Gratt. 291, 21 Am. Rep. 348.

*Sinness & Duffy* and *John J. Dwyer,* for respondents.

The state cannot be the heir of anyone. It can only take when there are no heirs. It takes, not by way of succession, but by way of escheat. 10 R. C. L. 602 et seq.; 1 Ross, Prob. Law & Pr. p. 187; Comp. Laws 1913, §§ 9, 5760.

"All property, real and personal, within the limits of the state, which does not belong to any person or to the United States, belongs to the state. Whenever the title to any property fails for want of heirs or next of kin, it reverts to the state." Comp. Laws 1913, §§ 9, 5760; Finn v. Walsh, 19 N. D. 61.

The establishment of an escheat certainly does not come under the head of probate or testamentary matters. The probate courts are successors to the jurisdiction of the ecclesiastical courts of England while the escheat proceeding is derived from the ancient proceeding of office found. 10 R. C. L. 609.

It is clear that distribution relates to the passing of title by inheritance, and not by escheat. 9 R. C. L. and definition of descent and distribution in Bouvier's Law Dictionary.

"In many states the method of enforcing an escheat and the court in which the action shall be brought are prescribed by statute, and it is obvious that the statutory requirements must be complied with in all respects to confer jurisdiction." 10 R. C. L. 611.

"The proceeding to enforce an escheat is in the nature of an inquest of office. The proceeding is now generally regulated by statute, and when so regulated the right must be established in the manner provided, and all the requirements of the statute substantially complied with." 16 Cyc. 553. See Wilbur v. Tobey, 16 Pick. 177.

To the same effect see note in 12 L.R.A. 529.

"Determining whether property has escheated to the state, and deciding the questions involved in such a proceeding, constitutes no part of the ordinary duties of the probate court." 1 Church, Prob. Law & Pr. p. 69; Re McClellan, 27 S. D. 109, 129 N. W. 1037, Ann. Cas. 1913C, 1029; Re Miner, 143 Cal. 194, 76 Pac. 968; 1 Ross, Prob. Law & Pr. p. 187.

It is well settled in this state that where a county court assumes to determine matters beyond its jurisdiction, its decree is void and of no effect. Arnegaard v. Arnegaard, 7 N. D. 501; Gjerstadengen v. Van Dusen, 7 N. D. 612; Finn v. Walsh, 19 N. D. 61.

The supreme court of this state has repeatedly held that the courts have inherent power to vacate or amend their void or irregular judgments and decrees, and that such action may be taken at any time irrespective of the statutory limit of one year. Martinson v. Marzolf, 14 N. D. 309; Freeman v. Wood, 11 N. D. 1; Campbell v. Coulston, 19 N. D. 645. See also 15 R. C. L. 692; 23 Cyc. 905.

The right of the county courts to vacate or amend their decrees is expressly granted by statute. Comp. Laws 1913, §§ 8591–8598.

Heirs can maintain an action for possession of property without the necessity of a decree of a probate court establishing their heirship, particularly where there are no creditors of the decedent. Notes in 15 L.R.A. 493, 112 Am. St. Rep. 729, 4 Ann. Cas. 195, 20 Ann. Cas. 96, and 22 L.R.A.(N.S.) 457, 11 R. C. L. 27, 28.

BIRDZELL, J. This is an appeal from an order overruling a demurrer to the complaint. The action is brought by the plaintiffs against the state of North Dakota and John Steen, as treasurer, for the recovery of certain personal property alleged to have come into the possession of the defendant as a result of a decree of distribution entered in probate proceedings in the county court of Benson county. The facts alleged upon which the questions of law raised by the demurrer depend may be briefly stated as follows: One Michael Clifford died on or about the 9th day of October, 1913, in the city of Minneapolis, Minnesota, leaving certain personal property in Benson county, North Dakota, where he had formerly resided. In February, 1914, one F. E. Wood was appointed administrator of the estate in Benson county, and in February, 1915, he presented his final report and account, which was approved in April following. The administrator was discharged in May, 1915, and died the following December. In the final decree of distribution entered at the time of the discharge, it was decreed "that the said state of North Dakota is the only heir of said deceased, and as such is entitled to the whole said estate," the estate referred to consisting of the personal property sought to be recovered in this action. Pursuant to the decree, the

property was turned over to and receipted for by John Steen, as state treasurer of the state of North Dakota. In the petition for letters of administration the petitioner Wood recited and alleged upon information and belief that the deceased "left two sisters surviving him, and also children of said sisters; but that the names or residences were wholly unknown." It is alleged that no search was made to determine the names or whereabouts of the heirs at law of the deceased; that the plaintiffs had no knowledge of the death of Michael Clifford nor of the probate proceedings; that they are the sisters of the deceased and his next of kin and heirs at law, and, as such, entitled to the residue of his estate; and that, after the entry of the final decree, upon learning of the death of Michael Clifford, plaintiffs forthwith petitioned the county court for a reopening of the probate proceedings, in pursuance of which petition an order was made modifying the final decree of distribution by vacating that portion decreeing the residue of the estate to the state of North Dakota and substituting an order that the residue be turned over to the treasurer of the state of North Dakota as *custodian* to be held by him in trust until otherwise disposed of according to law. It is further alleged that this order was entered in June, 1917, that no appeal was taken from it, and that in September, 1917, the plaintiffs duly demanded the property and the defendant refused to deliver the same and still refuses to do so.

The brief of the appellant contains a lengthy statement of so-called procedural facts with reference to the handling of the estate, both in this state and in Minnesota, which are confessedly outside the record, and which for this reason merit no attention.

The legal questions involved are discussed in the brief under three heads: (1) The right of the plaintiffs to maintain this action against the state, or the state treasurer as trustee; (2) the jurisdiction of the county court to set aside and modify the final decree; and (3) the jurisdiction of the district court to determine who are the heirs at law of Michael Clifford, deceased.

Section 8 of the Compiled Laws 1913, provides that the original and ultimate right to all property within the limits of the state is in the state. Section 9 reads: "All property, real and personal, within the limits of this state, which does not belong to any person or to the United

States, belongs to the state. Whenever the title to any property fails for want of heirs or next of kin, it reverts to the state."

In § 5742 it is provided that property, either real or personal, passes to the heirs of an intestate decedent subject to the control of the county court and to the possession of the administrator for the purpose of administration. Section 5743 provides the order of succession. In these sections, as well as the sections immediately following, which treat of inheritances to and from illegitimate children and of the degrees of kindred in direct and collateral lines, ascending and descending, etc., the state is not regarded as taking by succession. In § 5760, however, it is provided that if there is no one capable of succeeding under the preceding sections and the title fails from a defect of heirs, the property of a decedent devolves and escheats to the state, and that an action for the recovery of the property or for its sale and conveyance may be brought by the state's attorney in the district court of the county or judicial subdivision in which the property is situated. The very language of this section excludes the idea that the state takes property in the line of succession, for the escheat is not declared to operate except where there is no one capable of succeeding and the title fails from a defect of heirs. If the state were regarded as an heir, it is manifest that the title would not fail. Under this section and § 9 of the Compiled Laws, an escheat is nothing more nor less than the reversion of property to the state which takes place when the title fails. These statutes are so inconsistent with the theory that the title of the last holder is continued in the state that the contention of the appellants on this point must fail.

Since, for purposes of succession to property, the state does not take as the last heir, it is necessary next to determine whether or not the plaintiffs may maintain this action against the state or against the state treasurer as trustee. It affirmatively appears on the face of the complaint that no action of escheat such as is provided for in § 5760, Compiled Laws of 1913, has ever been instituted by the state, and that the property came into its possession through the decree of the county court. The county court, being a court of limited jurisdiction, could not render a decree binding upon parties ostensibly affected thereby unless it was made in pursuance of a jurisdiction possessed by the court. It follows from this that, unless the county court had jurisdiction to direct the transfer of possession to the defendants, they are in the same position

as any other person would be upon obtaining possession of property through an administrator without legal warrant. They hold it subject to the superior claims, if any, of third parties. Claimants of property may sue the state when the title is involved, the same as though the state were an individual. Comp. Laws 1913, § 8175. So far as the state is concerned, or the officer purporting to act for it, the plaintiffs are precluded no further by the determination of the county court than they would be if the claim set up by them in this action had been set up by way of answer or petition in an action of escheat brought by the state.

This brings us to the crucial question in the case; namely, the jurisdiction of the county court. Section 8525 provides that the county court shall have jurisdiction, among other things, to take proof of and determine heirship, and to revoke such determination.

Section 8846 provides for the distribution of the estate upon final settlement, upon the petition of the executor or administrator "or of any heir, legatee, or devisee, . . . among the persons who are by law entitled thereto." Section 8859 requires that the decree of distribution shall name the persons and the proportions to which each shall be entitled, and provides that such persons may sue for and recover their respective shares. From these sections, as well as others to which it is not necessary to refer, it appears clear to us that probate proceedings in the county court are limited to an administration that will result in the payment of indebtedness and the ultimate distribution of the residue to the persons who are determined by the court to be the heirs, legatees, or devisees of decedents. We find no evidence in the statutes of an attempt to vest in the county court jurisdiction to determine escheats. 1 Church, New Prob. Law & Pr. p. 69. If there be no one to claim as heir, legatee, or devisee, and there be no evidence adduced to the county court from which it can determine who may succeed to the title of the decedent, the court exhausts its jurisdiction when it makes the negative finding to that effect, and the property is left legally in the possession of the administrator and rendered subject to such future proceedings as may be taken looking toward the final acquisition of the property by the state through the process of escheat.

We are also of the opinion, for reasons which will later appear, that § 5760 provides the exclusive procedure through which the state may acquire property by escheat. It follows from this that the county court

was without jurisdiction to thrust the property upon the state by the erroneous decree of distribution.

We are confident that upon a careful examination it will be found that the authorities support the foregoing conclusions. Before considering the cases in which courts have been called upon to construe and apply statutes similar to the controlling ones cited above, it may be profitable to refer to authorities in which the rules governing escheats generally are considered and applied. The escheats generally considered in American cases are those occasioned either by alienage or by defects of heirs. The escheats for felony, treason, and for breach of condition of feudal tenure, are practically unknown in American law. The procedure, however, having been borrowed from England, still partakes of the characteristics of the old English inquest of office. See note in 15 L.R.A.(N.S.) 379. The fact that the principles of feudal tenure do not obtain in this country has, in some instances, led to the confusing statement that the state takes as the last heir. This, in American law, has been regarded as a more appropriate expression than the alternative expression that the state takes the fee as the feudal lord. While it might be appropriate enough to thus distinguish differences in tenure, the statement can only serve to confuse if allowed to influence the procedure to establish escheats, where the statutes are not clear and explicit.

Chief Justice Shaw, in the case of Wilbur v. Tobey, 16 Pick. 177, dispels some of the confusion by drawing a clear line of distinction between instances of escheat through alienage and through failure of heirs. In that case it is pointed out that, at common law, an alien could not take by act of law, such as descent, and, therefore, upon the decease of an alien, who in his lifetime held property within the state, there would exist no one to take the property by descent. He could have no inheritable blood and consequently no legal heirs. The law, in these circumstances, would not allow the fee to remain in abeyance, but would vest it immediately in the commonwealth without inquest of office.

On the other hand, if a citizen should die intestate, as the property would descend to the kindred indefinitely, a presumption would arise, which would be good even against the commonwealth, that the decedent left heirs capable of taking, and this presumption would obtain until rebutted by proceedings instituted by the state. It was held that in such case an inquest of office was necessary in order that the state might be-

come seised of the property. Upon the presumption of heirship, see also People ex rel. Atty. Gen. v. Roach, 76 Cal. 294, 18 Pac. 407.

As against the holding of the Massachusetts court, through Chief Justice Shaw, above referred to, we have the expression of Chancellor Kent, in 4 Kent's Commentaries, page 424, to the effect that whenever an owner dies intestate without leaving inheritable blood or whenever the relations whom he leaves are aliens and there is a failure of competent heirs, the lands vest immediately in the state by operation of law, and that no inquest of office is necessary in such cases. When authorities of such distinction as the two referred to are found to be in apparent disagreement upon a matter of this sort, a lack of harmony in the decisions is to be expected. See note in 15 L.R.A.(N.S.) 379, and 10 R. C. L. 609–611. But in cases such as the one at bar, we are not in reality concerned with the question as to whether an action must be brought by the state in order to perfect its title, or whether the bringing of the action will only serve, in the event legal claimants do not appear, to vindicate a title previously acquired; for our statute (§ 5760) clearly contemplates that such an action shall be brought on behalf of the state to obtain the property.

Statutes analogous to ours have been construed in California and South Dakota. In both jurisdictions it has been held that the duties of the probate court were limited to the administration of the estate for the purpose of arriving at the residue of the property and its distribution among those known to be rightful distributees. See 1 Church, New Prob. Law & Pr. p. 69. Also that a separate action was necessary in order to invest the state with title to the escheated property. In the case of Re Miner, 143 Cal. 194, 76 Pac. 968, the following paragraphs of the syllabus indicate the pertinent holdings of the court:

"1. An order of the probate court reciting that the affairs of an estate had been finally settled and that there were no heirs or other claimants thereof, and ordering 'that the county treasurer of this city and county forthwith pay into the state treasury all moneys and effects in his hands belonging to such estate,' did not *ipso facto* operate to vest in the state the title to the fund ordered to be deposited in the state treasury, as upon a decree in an action brought to escheat the same.

"2. There is no limit to the time within which native born American citizens may come forward and claim property to which they have suc-

ceeded, so long as no judgment or decree in a proper proceeding to escheat has been entered.

"3. The state does not come in by way of succession on failure of heirs or next of kin to take an estate of a decedent, but in such event the property, whether real or personal, goes to the state by escheat."

We have carefully examined the statutes under consideration in the California case, and while they are somewhat more comprehensive and specific as to procedure than the similar statutes in this state, they are not substantially different. The basic provision governing escheats, as distinguished from the procedure to determine it, seems to be drawn from the same source as our statute. See § 530, Draft of Civil Code for State of New York 1862; also §§ 795, 796, Dak. Rev. Codes 1877; § 5760, N. D. Comp. Laws 1913, 2 Kerr's Cyc. Code of California, §§ 1405–1407.

In the two appeals in Re McClellan, 27 S. D. 109, 129 N. W. 1037, Ann. Cas. 1913C, 1029, and 31 S. D. 641, 141 N. W. 965, the supreme court of South Dakota adhered to the rules previously announced in California. A statute identical with § 5760 of the Compiled Laws of 1913, was construed in the latter of the two appeals as follows (31 S. D. 654): "We think it clear, under this statute, if it be a fact that there are no heirs when the owner dies, the title to his property instantly vests in the state, but that the state is not given the right to recover the property and reduce it into possession of the state or sell and convey it, except through an action of escheat. The title which vests in the state is not created or vested by the judgment in the action. But the judgment becomes evidence of the facts upon which the state's title rests, and renders effective the right to recover and reduce the property into possession of the state." See also Wallahan v. Ingersoll, 117 Ill. 124, 7 N. E. 519; Wunderle v. Wunderle, 144 Ill. 40, 19 L.R.A. 84, 33 N. E. 195; State v. O'Day, 41 Or. 495, 69 Pac. 542.

By a party of reasoning the title could not vest in the state *ipso facto* upon the death of a decedent, if he in fact left heirs or persons capable of succeeding to the estate, as the subsequent fact of their nonappearance in the county court could not be anticipated. If it were intended to make the county court the final forum for determining the existence or nonexistence of the fact upon which the escheat depends, no good reason is perceived for making provision for the bringing of an action in

the district court, as is done in § 5760. The legislature would surely not provide for the bringing of an independent action to accomplish a result that could be reached by the simple entry of an order in probate proceedings, where the property is already in the custody of an administrator or executor. The fact that it has authorized such an action in every case is a strong indication that it was not intended that county courts should be permitted to adjudicate escheats. Furthermore, if the appellants' contentions are sound, the district court would be without power to determine the fact of the nonexistence of heirs, with the result that the determination in the district court would necessarily be predicated on facts that could not be established outside the county court. If the legislature intended these consequences, it surely would have directed that additional steps be taken in the probate proceedings instead of directing the bringing of a separate action.

It appears that the legislature of South Dakota recognized the desirability of providing a more definite procedure in relation to escheated property than is contained in our Code. In 1909, prior to the decisions above referred to, it enacted chapter 104 of the Session Laws for this purpose. But it does not appear that the decisions were controlled by that act.

The foregoing leads to the conclusion that the plaintiffs may, in this action, try their title as against the defendants, and that the attempted exercise of jurisdiction with regard to the escheat on the part of the county court, both in the original decree of distribution and in the subsequent modification of the same, being in excess of the jurisdiction of the court, does not affect the right of the plaintiffs in this action.

In the third proposition advanced by the appellants the jurisdiction of the district court to determine who are the heirs of Michael Clifford is attacked. The contention is made that the determination of heirship is necessarily an exercise of original jurisdiction in a probate matter, and, as such, it is vested exclusively in the county court by § 111 of the Constitution. Our views upon this question have been somewhat foreshadowed in the previous discussion, and to meet the issue squarely it need only be added that it is our opinion that, while exclusive original jurisdiction is conferred upon county courts to so administer estates as to bind creditors and those who take distributive shares in those proceedings through will or by succession, the full exercise of this jurisdiction

might still result in leaving undetermined, as between the state and legal heirs not appearing in county court, a question of title. The determination of this question in a court of general jurisdiction is no more an exercise of probate jurisdiction than would be the determination of a similar question between an administrator and some third party claimant whose claim is adverse to the estate. It is well settled that such questions can be properly determined only in courts of general jurisdiction. See Finn v. Walsh, 19 N. D. 61, 121 N. W. 766. In determining such a question it may become necessary to establish anew the facts in relation to heirship. The necessity for the ascertainment of these facts, however, does not characterize the proceeding as a probate proceeding; neither does it furnish an adequate reason for curtailing the jurisdiction of a court of general jurisdiction.

For the foregoing reasons the order appealed from is affirmed and the cause remanded for further proceedings not inconsistent with this opinion.