[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 444 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 445 
In pursuance of the terms of a legislative enactment entitled "An Act providing for the escheat of certain unclaimed personal property" and its amendments (R.S. 2:53-15 to 2:53-32,N.J.S.A.), a petition was filed in the Court of Chancery, in the name of the State of New Jersey, charging that the defendant has custody or possession of certain personal property which, by reason of the occurrence of one or more of the contingencies mentioned in the statute, has escheated to the State. A judgment is sought in this court declaring that the personal property so possessed and retained by the defendant has escheated to the State and directing its delivery to the State Treasurer.
The defendant in a schedule attached to its answer to the petition has revealed its possession of certain property comprehended by the statutory designation of escheatable personal property, such as unclaimed dividends, debenture interest coupons, Liberty Loan bond subscriptions, etc., which have for more than 14 successive years prior to the filing of the present petition remained unclaimed and unpaid because the beneficial owner or person entitled thereto and his address have been unknown.
The defendant denies, however, that such property is now subject to escheat by the State and the averments of the answer introduce for decision, inter alia, certain issues of law which have been summarized in the plaintiff's brief in the following fashion:
"A. Constitutionality:
"1. That if the escheat statute is construed so as to provide for the escheat to the State of the property here involved, it *Page 447 
violates both the New Jersey Constitution and the Constitution of the United States, in that it violates the right of the defendant to acquire, possess and protect property, in that it takes the property for the public use of the State of New Jersey without compensation and in that it deprives the defendant of its property without due process of law.
"2. That with respect to the shares of stock listed in Schedule A, the last known domiciles of the record owners of the said shares were outside New Jersey, and to escheat the said shares of stock would deprive the owners thereof of their property without due process of law, in violation of the New Jersey Constitution and the Constitution of the United States.
"B. Situs:
"That many of the persons listed in Schedule A as the former owners, or former beneficial owners, or persons entitled, were never citizens nor residents of the State of New Jersey and that the claims of such persons never had a situs in New Jersey; that if such claims were subject to escheat in any jurisdiction, they would be subject to escheat in the State of the last known domicile of such persons.
"C. Jurisdiction:
"1. That this court is without jurisdiction to escheat such property to the State of New Jersey, and a decree of escheat of this court would not protect the defendant from the claims of such other States in which the former owners or former beneficial owners might have been domiciled.
"2. That this court is without jurisdiction to escheat the shares of stock of the record owners thereof, since the last known domicile of such persons was outside New Jersey, and to escheat such property would mean that the record owners or other persons who may now own the same, would be deprived of their property without due process of law; that this would expose this defendant to liability to the true owners of the said shares of stock, which liability might be asserted against the defendant in other states where the defendant is suable, the defendant being suable in a number of other states, or would *Page 448 
expose the defendant to escheat proceedings in the states of the last known domiciles of the owners of the said shares of stock.
"D. Statute of Limitations:
"That all causes of action with relation to the said dividends, etc., accrued and arose against the defendant more than six years prior to the passage of the escheat act, as well as more than six years prior to the institution of these proceedings, and that any right of action has been barred by the New Jersey Statute of Limitations; that therefore all claims thereon have been legally extinguished and have become wholly unenforceable against the defendant.
"The defendant asserts that it has a vested right in the defense of the Statute of Limitations as to all such claims, and that the legislature had no power to divest the defendant of such vested right."
At a pre-trial conference it was proposed that it would be advantageous to debate at a preliminary hearing the controversial points essentially of a legal character in their abstract form. Counsel retained in three other similar cases, to wit, State v.United Fruit Company, docket No. 169/54, State v. United StatesPipe Foundry Company, docket No. 169/53, and State v. UnitedStates Tobacco Company, docket No. 169/15, have participated. The expectation that numerous additional proceedings would be instituted in pursuance of the purposes of the statute is now a reality. Presently I shall have before me 107.
The briefs of counsel have invited my attention to more than one hundred reported decisions, augmented by numerous references to other sources of information relating to the subject of escheat and to the doctrine of Bona Vacantia. I have, despite my current duties, consulted them.
In this pursuit, however, I have discovered that some of the points of law projected for consideration cannot be preliminarily settled from an abstract presentation because the rulings necessarily implicate their application to a concrete statement of the facts of the particular case. To announce the *Page 449 
variations in the law in their apposition respectively to the imaginable divergencies of the facts of such cases would require a composition of inordinate capacity.
Neither shall I be enticed by the abundance of informative material at hand to discuss historically the power of escheat which in this country has subsumed the governmental appropriation of personal property. A legislative recognition of the power to escheat real property may be found in New Jersey as early as February 27, 1828. Elm. Dig. 162; O'Hanlin v. Den,20 N.J. Law 31, affirmed Van Kleek v. O'Hanlon, 21 N.J. Law 582. Perhaps the recent enactments in many states have been inspired by the appetite for new sources of needed public revenue but, as Mr. Justice Jackson recently remarked, "Escheat, of course, is not to be denied on constitutional grounds merely because the motive of the state savors more of the publican than of the guardian." Connecticut Mutual L. Ins. Co. v. Moore,333 U.S. 541, 92 L.ed. 641, 68 S.Ct. 682. True, the sovereign power of escheat has been obliged to accommodate itself to the processes of evolution in governmental and property innovations, yet its legal vitality has not diminished on the way.
Is our Escheat Act manifestly unconstitutional on its face? In my judgment it is not. The power of the sovereign state to take charge of personal property evidently so abandoned or unclaimed cannot be successfully controverted, notwithstanding the apprehension that the right to effectuate such power with respect to certain property and in certain special circumstances may be lawfully blockaded. Anderson Nat'l Bank v. Luckett,321 U.S. 233, 88 L.ed. 692, 64 S.Ct. 599, 151 A.L.R. 824; Hamiltonv. Brown, 161 U.S. 256, 40 L.ed. 691, 16 S.Ct. 585;Christianson v. King County, 239 U.S. 356, 60 L.ed. 327, 36S.Ct. 114; Security Sav. Bank v. California, 263 U.S. 282,68 L.ed. 301, 44 S.Ct. 108, 31 A.L.R. 391; United Statesv. Klein, 303 U.S. 276, 82 L.ed. 840, 58 S.Ct. 536;Provident Inst. for Sav. v. Malone, 221 U.S. 660,55 L.ed. 899, 31 S.Ct. 661, 34 L.R.A. (N.S.) 1129; Cockrill v.California, 268 U.S. 258, 69 L.ed. 944, 45 S.Ct. 490;Connecticut Mutual L. Ins. Co. v. Moore, supra; Re Melrose Ave.,234 N.Y. 48, *Page 450 136 N.E. 235, 23 A.L.R. 1233; In re Philadelphia Elec. Co.,352 Pa. 457, 43 Atl. (2d) 116; Germantown Trust Co. v.Powell, 265 Pa. 71, 77, 108 Atl. 441; Commonwealth v.Dollar Savings Bank, 259 Pa. 138, 145, 102 Atl. 569, 1A.L.R. 1048; Cunnius v. Reading School District, 206 Pa. 469,471, 56 Atl. 16, 98 Am. St. Rep. 790, affirmed198 U.S. 458, 49 L.ed. 1125, 25 S.Ct. 721; Univ. of N. Car. v.High Point, 203 N.C. 558, 166 S.E. 511; Delaney v. State,42 N.D. 630, 174 N.W. 290; In re Forney, 43 Nev. 227,184 P. 206, 186 P. 678, 24 A.L.R. 553; Re Apostolopoulos,68 Utah 344, 250 P. 469, 253 P. 1117, 48 A.L.R. 1322; ReMontello Salt Co., 88 Utah 283, 53 P. (2d) 727; 21C.J. 851; 19 Am. Jur. 383; 34 Illinois Law Review 171.
The point at issue that generates some perplexity and the one that has, I confess, protracted my deliberations, relates to the availability and effectiveness in these cases of the defense of the statute of limitations where, as here, it is affirmatively interposed by the defendant.
I face an imposing procession of decisions by the courts of this State relating to the essence and affiliated effects of the so-called immunity from suit which arise by operation of the statute of limitations. The proximate pertinency of this subject to these proceedings becomes at once discernible upon the suggestion of the inquiries — whether the immunity conferred by the statute of limitations constitutes a vested right; whether, where invoked, it operates to extinguish the chose in action, the debt, the proprietary interest of the claimant which, as the case may be, is sought to be escheated, and if such is its operative effect, can the legislature by the passage of subsequent legislation revive claims which have theretofore become legally incapable of recovery?
To display the state of the law on this topic in New Jersey, I shall quote liberally from some of our reported decisions.
At the head of our column of authorities is the uniformly cited decision of Chief Justice Beasley in Ryder v. Wilson'sExecutors, (1879), 41 N.J. Law 9, in which he stated (atp. 11): "The decisions of the courts, so far as my research has extended, are wholly in accord on this subject, and, with one voice, they declare that when a right of action has become barred *Page 451 
under existing laws, the right to rely upon the statutory defence is a vested right, that cannot be rescinded or disturbed by subsequent legislation. Judge Cooley, treating of this subject, in his work on Constitutional Limitations, thus states his views: `As to the circumstances under which a man may be said to have a vested right to a defence, it is somewhat difficult to lay down a comprehensive rule. He who has satisfied a demand, cannot have it revived against him; and he who has become released from a demand by the operation of the statute of limitations, is equally protected. In both cases, the right is gone, and to restore it, would be to create a new contract for the parties — a thing quite beyond the power of legislation.' Const. Lim. 369. And how completely the doctrine thus declared is a legitimate deduction from the authorities, will very plainly appear by a reference to the numerous cases collected by this same author, in his note on page 368."
Two years later (1881) Justice Dixon delivering the opinion of the Court of Errors and Appeals in Moore v. State,43 N.J. Law 203, 206, 208, remarked: "And it has been repeatedly adjudged that a statute which bars all remedy, gives a perfect title, with all its incidents. Knox v. Cleveland,13 Wis. 249; Moore v. Luce, 29 Penna. St. 262; Leffingwell v.Warren, 2 Black (U.S.) 599; 2 Wash. Real Prop. 574;Cooley's Const. Lim. 365.
 * * * * * * * * *
"It thus, then, appears to be settled by numerous decisions in civil causes, that when a right of action is barred by a statute of limitations, it cannot be revived by act of the legislature, and that when such a right is so barred in favor of one having possession of property, (if there be no conflicting jurisdictions,) the possessor becomes the owner of the property, with all the incidents of ownership, and his title cannot be impaired by subsequent legislation. Whether these decisions rest upon express constitutional declarations, or upon still deeper principles, underlying all popular government, is not so important to the present inquiry as is the fact that the stability of their foundation is assured." *Page 452 
In a dissenting opinion Justice Van Syckel nevertheless expressed the view (at p. 247) that: "The legislature may at will repeal all such limitation acts; but when they come to be applied to individual cases, where the limit had expired, titles and property rights acquired and vested under them, as between citizens, before the repeal, are invulnerable. Such rights survive, as individual property, when the law dies.
"The incompetency of the legislature to affect the citizen by the repeal of a limitation act upon suits or contracts, does not rest upon the ground that the statute of limitation is presumed to have entered into the contract and to have become part of it, for that would prevent an enlargement of the time of limitation before the bar attached; but it is founded upon the fact that, by the lapse of time, property rights are acquired.
"A right of action is a property right which may be sold and assigned. Therefore, after the bar has attached, an act of legislation which revives the right to sue, is an act to vest property in one at the expense of another. A statute giving or taking away a right of action, gives or takes away property. That was the case of Ryder v. Wilson's Ex'rs, in our own courts. 12Vroom 9."
In 1915 Chief Justice Gummere speaking for our Court of Errors and Appeals in Plahn v. Givernaud, 85 N.J. Eq. 143,96 Atl. Rep. 40, concerning the principle that a right which has become vested by the expiration of time cannot thereafter be impaired by legislative enactment, added (at p. 146): "It is fully supported by the reasoning of Chief-Justice Beasley in the opinion delivered by him in our supreme court in Ryder v.Wilson's Executors, 41 N.J. Law 10, and by that of Mr. Justice Dixon, speaking for this court, in the case of Moore v. State,43 N.J. Law 203, and meets with our entire approval."
Again in Ballantine Sons v. Macken, 94 N.J. Law 502,110 Atl. 910, our court of last resort declared (at p. 503): "The rule is institutional and fundamental that a party who has become released from a demand, by the operation of the statute, is protected against its revival by a change in the limitation law, the defence of the statute being considered a vested right * * *" *Page 453 
It may well be conjectured that Justice Bradley was advocating the doctrine of his home state of New Jersey when in his dissenting opinion in Campbell v. Holt, 115 U.S. 620, 630,29 L.ed. 483, 6 S.Ct. 209, he said: "Now, an exemption from a demand, or an immunity from prosecution in a suit, is as valuable to the one party as the right to the demand or to prosecute the suit is to the other. The two things are correlative, and to say that the one is protected by constitutional guaranties and that the other is not, seems to me almost an absurdity. One right is as valuable as the other. My property is as much imperiled by an action against me for money as it is by an action against me for my land or my goods. It may involve and sweep away all that I have in the world. Is not a right of defense to such an action of the greatest value to me? If it is not property in the sense of the Constitution, then we need another amendment to that instrument. But it seems to me that there can hardly be a doubt that it is property.
"The immunity from suit which arises by operation of the Statute of Limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when he justly owes the debt for which he is sued; and this has led the courts to adopt strict rules of pleading and proof to be observed when the defense of the statutes is interposed. But it is, nevertheless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has."
In Campbell v. Holt, supra, the Supreme Court of the United States resolved that where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after the right of action is thereby barred, and restore to the plaintiff his remedy, thus divesting the defendant of the statutory immunity from suit. *Page 454 
That adjudication, although since reconsidered, has not been overruled.
Realistically, statutes of limitation are legislative expressions of pragmatical public policy. Their sustenance is expediency rather than logic. The effort to give them a congenial place in a syllogistic system of law has aroused considerable diversity of rationalization in our legal philosophy.
The courts of some states have associated all such statutes with the civil law creed of prescription and hold that they not only blow out the claim but extinguish the right itself. Others have expressed the conviction that such statutes do no more than amputate the right to resort to the courts for the enforcement of the tardy claim and that they are limitations of remedy and not efficacious either in destroying or transposing fundamental rights.
The abstract distinction between substantive rights and remedial or procedural rights is not always smoothly comprehensible. Frankly, I encounter difficulty in regarding something as an "existing right" which is wholly destitute of any remedy either for its assertion or for its invasion. Noticeably our state courts have not been submissive to the reasoning inCampbell v. Holt, which certainly they are privileged to do in construing any provision of our state Constitution. Vide, Moorev. State, supra, on p. 207; Art. 1, Par. 1,Constitutions 1844 and 1947.
And so in the consideration of the abstract question here introduced for solution, I find myself in my judicial capacity impinged between the philosophy of our own judicial precedents and the manifestly deliberate intention of the legislature to employ a sovereign power which is essentially analogous to those prerogatives embraced by what we denominate as the police power of the state. Cf. Camfield v. United States, 167 U.S. 518,523, 524, 42 L.ed. 260, 261, 262, 17 S.Ct. 864.
In Trustees, c., Public Schools v. The Ott Brewer Co.,135 N.J. Eq. 174, 177, 37 Atl. (2d) 832, I had reason to assert: "Broadly stated, it is a rule of universal recognition that a statute of limitation should not be construed to encircle the government unless it is manifest from the mischief to be reached, the express language employed or by necessary implication therefrom, *Page 455 
that the government was in the contemplation of the legislature. The doctrine is distinguished by the ancient and familiar maxim,`Nullum tempus occurrit regi.' We are told that it probably exists, in some form, in the jurisprudence of every civilized people. It springs from the superior and preeminent policy to preserve public rights, revenues and property from injury and loss otherwise resulting from the inadvertence or neglect of public agents. In a representative government under which the people act only through the authority delegated to their agents, the reasons for the application of the doctrine continue to be cogent. The principle has been received with favor by our courts." Cross v. Mayor, c., of Morristown, 18 N.J. Eq. 305;Trustees of Public Schools v. City of Trenton, 30 N.J. Eq. 667; Jersey City v. Hall, 79 N.J. Law 559, 76 Atl. 1058;Guaranty Trust Co. of N.Y. v. U.S., 304 U.S. 126,82 L.ed. 1224, 58 S.Ct. 785.
But it is said with some appreciable logic that the last-mentioned principle is understood to be applicable between the state and its direct and immediate debtor or obligor, but that the claim of the state in a proceeding to escheat is entirely derivative and where as between the original debtor and creditor the debt has become extinct, nothing remains due the creditor to be captured by the state. The insistence is that if the alleged right of the state is derivative, the state can only acquire the rights of the unknown owner subject to the defense which the defendant has a vested right to plead if sued by the beneficial owner. Guaranty Trust Company v. United States,supra, based upon King v. Morrall, 6 Price 24, 146 Eng.Reports, Full Reprint, Exch. Bk. 2; United States v. Buford, 3Peters 12, and Lambert v. Taylor, 4 B. C. 138, 107 Eng.Reports, Full Reprint, K.B. Bk. 36.
I am, of course, requested for present purposes to assume that the claim sought to be captured by the state was already barred by limitation against suit before the passage of our escheat statute and before the institution of these proceedings.
The common law abhorred the idea that ownership of property should be in abeyance or in nubibus, hence in the case of the failure of ownership of personal property arose *Page 456 
the doctrine of bona vacantia. I am not at all convinced thatunder the common law the doctrine extended to personal property of which the owner was merely unknown or whose whereabouts was unknown. Holdsworth, A History of English Law (2d ed.) 495, 496. I believe the doctrine to have been confined to personalty to which no one was lawfully entitled or which no one was legally capable of receiving by succession. The power, modernly recognized, to escheat personal property which appears evidentially to have been abandoned or unclaimed by its owner, is a creature of legislation enacted in the exercise of the governmental police power. Vide. Illinois Bell Telephone Co. v.Slattery, (C.C.A. 7th, 1939), 102 F.2d 58; Re MontelloSalt Co., supra; "Bona Vacantia," by F.A. Enever. And so it would appear that the state had no common law proprietary interest in the so-called abandoned and unclaimed personal property and no statutory claim thereto until the passage of the enactment here implicated.
Former Vice-Chancellor Fielder had in contemplation the interposition of the statute of limitations in escheat proceedings in his consideration of State v. Commercial TrustCo. of N.J., 139 N.J. Eq. 12, 18, 49 Atl. (2d 680. He alluded to the possibility that the liability of the defendant may have been terminated by the statute of limitations.
The relatively few decisions elsewhere concerning the potentiality or ascendency of the defense of the statute of limitations invoked by the possessor of the personal property in escheat proceedings are all in jurisdictions in which, like Pennsylvania, the long-established and adopted conception is that statutes of limitation supply only a procedural limitation and do not embrace substantive rights. Vide. In re PhiladelphiaElectric Co., supra.
Obviously, the decision in Chase Securities Corp. v.Donaldson, 325 U.S. 304, 89 L.ed. 1628, 65 S.Ct. 1137, rests upon the same hypothesis. It appropriately follows the path made by the decision in Campbell v. Holt, but manifestly our state courts of highest authority have not done so. Indeed, inBallantine Sons v. Macken, supra, our Court of Errors and Appeals, notwithstanding the citation of the decision inCampbell *Page 457 v. Holt, nonetheless resolved that the defense of the statute of limitations should in our state be regarded as a vested right, notwithstanding the fact that tangible property is not involved. Accord, 34 Am.Jur. 39, § 35.
I am therefore constrained to conclude that where a right of action has become barred under the provisions of a statute of limitations, the statutory defense is in the existing law of this state a vested right. In declaring it to be our present law, I mean I cannot help believing it to be so. I am not insensible to the touch of the legislative object sought to be attained for the financial betterment of the state which may be in some degree thereby abridged. Nevertheless I cannot with judicial propriety in this trial court ignore the fountains of our domestic law or attempt to hoe out the precedents which with the approbation of a lengthy span of time have been allowed to take firm root. Let my conviction of the law be confirmed or denied by those who are better equipped in the judicial function.
However, what does my present declaratory opinion anent the abstract point portend in the way of a final judgment in these cases? The vital issues will depend upon the substratum of fact in each proceeding. At what time and upon what event did the statute of limitations begin to toll in the given case, or has it not yet tolled, or was the relationship one of trust to which the statute is not to be rigidly applied in equity? For example, in what manner, if at all, is the statute of limitations to be applied to unclaimed wages and salaries, commercial bank checks, unpaid certified checks, undemanded debenture coupons, balances of Liberty Loan subscriptions, and dividends on capital stock?
Those diversified issues as well as those relating to the situs of the res and to the place of residence of the reputed owner are not practicably susceptible to abstract predeterminations. It is not the function of a court to supply answers to a book of hypothetical riddles.
It may be informative for me to make some comment upon the requisites of the notice to be published in conformity with the probable intent and interpretation of R.S. 2:53-21, N.J.S.A. *Page 458 
Frankly, I regard the impoverished provisions pertaining to the notice to be given as an infirmity in the act, but not a mortal one. Viewed in its entirety the statute does afford a claimant a day in court. It also authorizes resort to service by publication. Due process requires such a notice to be reasonably adequate in its information and publication to safeguard the right comprehended by the Constitution. Anderson National Bankv. Luckett, supra; Security Savings Bank v. California, supra;Hyman v. Muller, 62 Atl. (2d) 221.
I accordingly recommend to the Department of Law that in addition to "a summary of the order designating the time and place of hearing," the notice should also contain the names and last-known addresses, and amounts of money or character of property belonging to any such person or for whose benefit it is held. See Purdon's Pa. Stat. Ann. Title 27, § 438.