THE STATE OF NEW JERSEY, TRUSTEES FOR THE SUP-PORT OF PUBLIC SCHOOLS OF THE STATE OF NEW JERSEY, AND GUSTAVE PAVCSIK, APPELLANTS, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF RUTHER-FORD ET AL., RESPONDENTS.

Submitted December 11, 1922—Decided March 5, 1923.

The construction given to the Tax act of 1918 by the Supreme Court brings it into conflict with the constitutional provisions protecting the school fund and the income thereof from expenditure by the legislature; such expenditure includes expenditure for taxes.

---

On appeal from the Supreme Court.

For the appellants, *Thomas F. McCram,* attorney-general.

For the appellees, *John M. Bell.*

The opinion of the court was delivered by

SWAYZE, J. This *certiorari* is to review an assessment of local taxes against property belonging to the trustees for the support of public schools. The land was mortgaged by William J. Stewart. the then owner, to the commissioners of the sinking fund, and on foreclosure was conveyed to that board by the sheriff of Bergen county, by deed dated June 4th, 1879. The commissioners of the sinking fund were abolished (*Pamph. L.* 1891, *p.* 136) and the state treasurer was vested with their powers. *Comp. Stat., p.* 4956, ¶ 93; *Pamph. L.* 1903, *pp.* 60, 366; *Comp. Stat., p.* 4956, ¶ 96. The state

treasurer was required by the legislature to deliver to the trustees for the support of public schools all moneys held in the name of the commissioners of the sinking fund and of the state treasurer as their successors. He was directed to convey to the trustees for the support of public schools all lands standing in the name of the commissioners of the sinking fund or the state treasurer as successor, and to assign to the trustees all mortgages standing in the name of the commissioners of the sinking fund or in the name of the state treasurer as successor.

The title to the land which formerly belonged to the sinking fund was thus vested in the trustees for the support of public schools. The land on which the present taxes are assessed was conveyed by the then state treasurer to the present prosecutor, and although the assessment for taxes continued to be made in the name of the commissioners of the sinking fund, it is conceded it should have been made in the name of the trustees for the support of public schools. The substantial claim on the part of the prosecutor is that under the constitution, article 4, section 7, paragraph 6, the property of the trustees for public schools is not subject to local taxes.

The language of the constitution seems to us too plain to call for interpretation or construction. The fund for the support of public schools and all moneys, stock and other property which may be appropriated for that purpose or received into the treasury under the provisions of any law passed to augment the fund is to be securely invested and remain a perpetual fund, and the income thereof, except so much as it may be adjudged expedient to apply to an increase of the capital, is to be annually appropriated to the support of public schools for the equal benefit of all the people of the state. By express prohibition it is not competent for the legislature to borrow, appropriate, or use the fund or any part thereof for any other purpose under any pretense whatever. Obviously, the constitution intended that the fund and the property in which it was invested were to remain a per-

petual fund for public schools, and in order to guard specifically against its being spent by the legislature, provision was made limiting the purposes for which the income could be spent to the support of public schools except so much as it might be adjudged expedient to apply to an increase of the capital. The legislature may provide for the expenditure of the income of the school fund but only for the annual support of the schools or an increase of the capital of the fund.

That language makes it plain that the income cannot be used for the payment of local taxes to the municipality in which any of the real estate of the school fund may lie. The income can never be spent except for an increase of capital or the support of public schools for the equal benefit of all the people of the state. Nor can it be said that the payment of local taxes is no more than the payment of a necessary charge upon the property of the school fund. Local taxes are not a necessary charge upon property of the state. The question was thoroughly discussed in *Trustees of Public Schools* v. *City of Trenton,* 30 *N. J. Eq.* 667. In that case it was held that local taxes were not a lien prior to the school fund mortgage notwithstanding the language of the Tax act to that effect. We said "The moneys represented by the complainants' mortgage are not a legitimate subject of taxation by the city, for the reason that they are the property of the state, and by implication are excluded from the class of property over which the city's power of taxation extends." This was held although the court also said that the power of the legislature, in virtue of its sovereignty, to make taxes a lien upon the estate of all parties interested in the land, and to make the tax paramount to all other and prior claims and encumbrances was not denied. This language must be read in the light of the whole opinion. On its face at first blush it seems to authorize the legislature to impose local taxes on state property and to rest the decision upon the fact that the legislature had not then given that authority. The Court of Errors and Appeals and the great judge who spoke for it in that case, of course was not blind to this and was careful to

warn against misconstruction. On the very next page, he says that the court considering the question on broader grounds and aside from the constitutional provision upholds the exemption of the trustees of public schools from local taxation even in the absence of such a provision. He refers to the constitutional protection of the school fund expressly in order that no inference may be drawn from the opinion that the legislature has the capacity to impair the integrity of that fund, or the produce of its investments, by methods which are direct or indirect either under the powers of taxation or by any other means whatever.

The effect of that opinion construed in its entirety is that the trustees for public schools are exempt from taxation even in the absence of the constitutional provision but that the importance of that provision must not be lost sight of because the court chose to place the decision on another ground.

The case of *Trustees of Public Schools* v. *Trenton* did not require a consideration of the constitutional question now raised. The legislature had not as yet under the proper construction of the Tax acts, asserted a capacity to impair the integrity of the school fund. Perhaps under the rule of construction adopted in that case we might properly hold that it has not done so in the present case, since we ought to be loath to give a statute a construction which would bring it into conflict with the constitution. In view of the misunderstanding of what was decided in the Trenton case we prefer to assume that the construction given by the court below to the Tax act of 1918 is as a mere matter of statutory construction correct. But that does not mean that we sustain the right of the legislature to impair the integrity of the school fund, in the very teeth of the express language of the constitution and the decision of the Court of Errors and Appeals. This we cannot do. We must rather hold that the statute is unconstitutional.

The fact that recent legislation subjects to taxation property acquired by certain state boards through foreclosure is not to the point since those boards are not protected by the

constitution. The exemption of the school fund rests not on the character of the property or the source of the title but on the character of the fund itself and the purpose to which it is devoted. Exemption from taxation is to be justified by the fact that the equal benefit of all the people of the state is thus most readily secured, while local taxes at best benefit only citizens of the particular municipality. Schools are recognized as legitimate subjects of exemption, and free schools are recognized as legitimate subjects of constitutional protection.

It is suggested that our construction may prevent the trustees for public schools from buying desirable investments at a premium and the same reasoning would apply if they were bought when interest had already accrued on the purchased security. That question is not involved in the present case but where a security is bought on which interest has already accrued or on which there is a premium in the market, the investment is not merely in the security at its par value. So far as concerns accrued interest, the amount is only a temporary investment and so far as concerns the premium it is only an investment in a wasting security for which provision must be made by way of a premium account to restore the waste when the purchased security reaches its maturity. These investments are obviously very different from spending the money of the school fund contrary to the provision of the constitution. They are strictly speaking, investments not in any way expenditures of the school fund. It is suggested also that the income of the school fund may properly be applied to the discharge of liens thereon. The difficulty is that cases may arise like the present case where there is no income from the property and if liens are to be discharged out of income it must be from the general income of the school fund and that is expressly forbidden by the provision of the constitution as to what shall be done with the income. We do not think it necessary to say more.

The judgment is reversed with costs.

*For affirmance*—BERGEN, BLACK, KATZENBACH, WHITE, VAN BUSKIRK, JJ.  5.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, KALISCH, GARDNER, ACKERSON, JJ.  7.