The present verified petition discloses that on February 21st, 1893, the Trustees for the Support of Public Schools filed a bill to foreclose a mortgage executed and delivered to the Trustees by the Etruria Pottery Company dated May 24th, 1880, encumbering certain real estate in the City of Trenton to secure the repayment of a loan of $20,000. A final decree made on May 29th, 1893, adjudged the mortgage debt due the complainant to be $21,836.65 with interest computed from May 20th, 1893; authorized the issuance of a fieri facias directing the sheriff to sell the premises to raise and satisfy the debt due to the complainant, with interest and costs; and decreed that the defendants stand debarred and foreclosed of and from all equity of redemption in the mortgaged premises when sold. The mortgaged premises were not sold, the writ was never returned and has long since disappeared. The complainant employs the present petition to obtain a special order for the issuance of an alias writ in pursuance of which the mortgaged premises may now be sold to pay the principal and interest at present due and owing.
Additionally it is revealed that since the entry of the decree the mortgaged premises have been conveyed at intervals to successive purchasers always subject to the complainant's decree. One of the owners of the premises, The Cook China Company, was adjudged insolvent and a receiver appointed by this court was empowered to convey the premises to Lenape Land Company subject to the complainant's lien. That deed is dated February 28th, 1930. The Lenape Land Company paid to complainant all accrued interest due on the date of the conveyance, and thereafter interest was paid on the debt up to August 1st, 1932. See HudsonTrust Co. *Page 176 
v. Boyd, 80 N.J. Eq. 267; 84 Atl. Rep. 715; Colonial Buildingand Loan Association v. Mongiello Bros., Inc., 120 N.J. Eq. 270: 184 Atl. Rep. 635. On January 26th, 1939, the premises were exposed to sale for delinquent taxes and struck off to the City of Trenton.
Notice of the present application was given those having any interest or estate in the premises, and the City of Trenton was the only party to appear. Counsel for the city impugns the power of this court to now order the issuance of an alias writ. Attention is attracted to the following provisions of our statutory law:
R.S. 2:24-6; N.J.S.A. 2:24-6. "A judgment in any court of record in this state may be revived by scire facias or an action at law may be brought thereon within twenty years next after the date thereof. The time during which the person entitled to the benefit of the judgment shall have been under the age of twenty-one years or insane shall not be computed as a part of such twenty years."
R.S. 2:29-57; N.J.S.A. 2:29-57. "A decree of the court of chancery shall, from the time of its being signed, have the force, operation and effect of a judgment at law in the supreme court, from the time of the actual entry of such judgment; and all decrees and orders of the court of chancery for the payment of money by one person to another shall have a like effect, and the chancellor may order execution thereon as in other cases, subject, however, to the provisions of section 2:29-58 of this title."
R.S. 2:29-70; N.J.S.A. 2:29-70. "Execution may issue without a revival of the decree, at any time within twenty years from the date thereof, if the parties thereto, or such of them during whose lives execution could issue without a revival, be then living; but if more than six years have elapsed since the entering of the decree, a special order of the court shall be necessary before the execution issue, which order shall be made upon ten days' notice to the defendant of the application therefor, and proof to the satisfaction of the court of the amount remaining due upon the decree."
In Stoddard v. Van Bussum, 57 N.J. Eq. 34; 40 Atl. Rep. 29,
Vice-Chancellor Pitney in construing those statutes, stated (atp. 37):
"So far as the fourteenth section of the Limitation Act [nowR.S. 2:24-6; N.J.S.A. 2:24-6] bears upon the question to be dealt with it acts only by analogy. The only difference between that section and the one hundred and tenth section of the Chancery Act is that the latter does not, by express language, forbid the issuing of execution after twenty *Page 177 
years from the date of the decree; but the force and effect of the Chancery clause is precisely the same, and, in my judgment, prevents by implication and without the aid of the fourteenth section of the Limitation Act the issuing of an execution after twenty years have elapsed.
"The character of the decree upon which an execution against the goods and chattels and lands of the defendant may issue is fixed by the fifty-sixth section of the Chancery Act [now R.S.2:29-57; N.J.S.A. 2:29-57], which, in my judgment, limits it to a decree by which an ascertained and fixed sum of money is ordered to be paid by one person to another. Such a decree is declared to have the effect of a judgment at law, and that execution may issue upon it against the property generally of the defendant."
In Hudson Trust Co. v. Boyd, supra, Chancellor Walker remarked (on p. 269):
"Now, the mortgage is very effectually continued when merged into a decree of foreclosure, which can be enforced by execution at any time within twenty years (on notice to defendant after the lapse of six years), and, under the terms of the decree, the defendants are not foreclosed of the equity of redemption until the premises are actually sold by virtue thereof."
The statutory provisions are in expression and in effect statutes of limitation. Broadly stated, it is a rule of universal recognition that a statute of limitation should not be construed to encircle the government unless it is manifest from the mischief to be reached, the express language employed or by necessary implication therefrom, that the government was in the contemplation of the legislature. The doctrine is distinguished by the ancient and familiar maxim, "Nullum tempus occurritregi." We are told that it probably exists, in some form, in the jurisprudence of every civilized people. It springs from the superior and pre-eminent policy to preserve public rights, revenues and property from injury and loss otherwise resulting from the inadvertence or neglect of public agents. In a representative government under which the people act only through the authority delegated to their agents, the reasons for the application of the doctrine *Page 178 
continue to be cogent. The principle has been received with favor by our courts. Cross v. Mayor, c., of Morristown, 18 N.J. Eq. 305; Trustees of Public Schools v. City of Trenton, 30 N.J. Eq. 667; Jersey City v. Hall, 79 N.J. Law 559; 76 Atl. Rep. 1058.
It is my understanding that the loan for the satisfaction of which the decree was granted came from the fund for the support of the free public schools. That fund under our constitution (article IV, section 7, paragraph 6) is to be securely invested and remain a perpetual fund, and the income derived from it, except so much as it may be deemed expedient to apply to an increase of the capital, is to be annually appropriated to the support and maintenance of public schools for the equal benefit of all the people of the state. Indeed, the legislature itself is prohibited from borrowing, appropriating or using the fund or any part thereof for any other purpose under any pretense whatsoever. It is at once obvious that the fund and the property in which it is invested are to constitute and remain a perpetual treasure for the public schools under the shelter of the supreme law of the state. Vide, State Land Board v. Lee, 84 Or. 431;165 Pac. Rep. 372. It therefore cannot be supposed that the legislature in the enactment of the statutes of limitation intended to forbid the recovery of a loan made from that fund because of a delinquency in its collection. Vide, State Land Board v.Campbell, 13 Pac. Rep. 2d 346.
Although the state is not the complainant eo nomine, the state is in reality the party in interest. The title of the fund is vested in the state in its sovereign capacity, and its beneficial ownership may be said to repose in the people of the state. Loans are not made from the school fund for a private purpose, but to obtain revenue to be devoted to the education of those upon whom the responsibility of the future welfare and stability of the state will devolve. This is assuredly a public purpose of the most conspicuous type.
Moreover, it is not evident that the present invigoration of the foreclosure decree will in any wise implicate or prejudice the interests of any purchaser who after a diligent and reasonable examination of the title to the mortgaged *Page 179 
premises failed to obtain actual or constructive notice of the mortgage or decree. The statutory restriction (R.S. 2:24-15;N.J.S.A. 2:24-15) is irrelative.
The only object of the City of Trenton is to establish, if possible, the priority of its tax lien. Again, it cannot be reasonably assumed that the legislature intended to place the investments of the perpetual school fund in a precarious state by subjecting them to the chance of being extinguished by the process of municipal tax sales. Trustees of Public Schools v.City of Trenton, supra; State v. Rutherford, 98 N.J. Law 465;120 Atl. Rep. 202; Trustees, c., of Public Schools v. Murphy,130 N.J. Law 434; 33 Atl. Rep. 2d 570.
However, that subject is not at present appropriately presented for decision.
An order will be advised authorizing the issuance of an alias writ of fieri facias in this cause commanding the sheriff to make sale of the mortgaged premises according to law and to bring the proceeds of the sale into this court to abide the further order.