[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 462 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 463 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 464 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 465 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 466 
This action will be recalled as a proceeding instituted in pursuance of the terms of a legislative enactment entitled "An Act providing for the escheat of certain unclaimed personal property," and its amendments, R.S. 2:53-15 to 2:53-32,N.J.S.A., in which on March 3, 1949, I filed a preliminary memorandum concerning certain controversial points, the legal character of which I was requested to consider in abstract form.64 A.2d 386. To avoid redundancy of discussion and unnecessary reproduction of citations, the present memorandum is to be regarded as an augmentation of the antecedent opinion. *Page 467 
I heretofore resolved that the so-called Escheat Act is not manifestly unconstitutional on its face. I adhere to that determination. I again conclude as an abstract question that where a right of action has become barred under the provisions of our statutes of limitations, the statutory defense in its ordinary application is, in the existing law of the State of New Jersey as announced by our adjudications and in its relation to the persons implicated, a vested right extinguishing the debt or legal obligation. See citations in 64 A.2d 386.
Notwithstanding the illumination produced by the stipulation of facts, the cardinal point of controversy in the present proceeding continues to attach to the defensive averment that in consequence of the tolling of the statute of limitations the defendant under the authority of our adjudications has acquired a vested right and title to most of the alleged escheatable property.
I unhesitatingly acknowledge that the courts of many other states have conceived such statutes to be mere limitations of remedy and not efficacious either to destroy or to transpose fundamental rights. Nevertheless, it seems to me that the rejection, displacement or inversion of the principle enunciated in our State by Chief Justices Beasley and Gummere, favored by Mr. Justice Bradley of the United States Supreme Court and concurred in by former Justices Dixon, Van Syckel, Depue, Magie, Garrison, Swayze, Parker, Trenchard, Bergen, Minturn, and Kalisch, is a proposal more properly to be cogitated and resolved upon by our court of last resort.
It is the insistence of the defendant that:
"All of the said claims and all choses in action with relation thereto accrued and arose against the defendant more than six years prior to the passage of the Escheat Statute, and that any right of action thereon was barred by the Statute of Limitations before the enactment of the Escheat Statute;
"By virtue of the bar of the Statute of Limitations, the said claims and choses had become legally extinguished and legally unenforceable against the defendant;
"At the time of the enactment of the Escheat Statute, the defendant had a vested right in the defense of the Statute of Limitations as to all such claims; *Page 468 
"The Legislature had no power to divest the said vested right to the defense of the Statute of Limitations, whether the Legislature did so in the interest of the original claimants or in the interest of the State of New Jersey;
"If the Escheat Statute is construed so as to provide for the escheat of such claims to the State of New Jersey, the said Act violates both the New Jersey Constitution and the Constitution of the United States, in that it violates the right of the defendant to acquire, possess and protect property and that it takes the property of the defendant for the public use of the State of New Jersey without compensation and that it deprives the defendant of its property without due process of law."
Obviously, if the principle which is presently regarded as establishing a vested right in the debtor with its consequent annihilation of the debt and in some instances its resultant transmission of title were to be abrogated, my present problem would materially evaporate.
At the argument I was fervidly invited to realize that to sustain the claim of the State against the defendant's invocation of the effectiveness of the statute of limitations would visit no prejudicial injury upon the defendant, whereas to confirm the defendant's contention upon that issue would in effect enable the defendant to aggrandize its private resources by bequests of unearned and undeserved assets.
I do not decline to envision the equitable aspects of the subject. In the composition of the Escheat Act of present interest the Legislature expressly conferred upon the former Court of Chancery exclusive jurisdiction over the contemplated proceedings, presumably with the intention that such proceedings would be governed by the principles and practices of a court of equity.
The jurisdiction of the former Court of Chancery has been transferred in its entirety to this court to be exercised primarily by its Chancery Division. Steiner v. Stein, 2 N.J. 367, 66 A.2d 719.
True, the rule has been familiar to us that if the subject matter in controversy in a Court of Chancery is of an equitable nature, not cognizable in a court of law, statutes of limitations although not ignored have no obligatory application, but the court will instead apply the doctrine of laches *Page 469 
according to its discretion, regulated by the peculiar circumstances and by the pertinent precedents.
Implicit in the terms and provisions of the Escheat Act is the persuasion of the Legislature that the retention of abandoned and unclaimed personal property for an ultimate and eventual disposition to the beneficial owner has constituted a relationship in the nature of a trust, hence the investment of jurisdiction in equity.
True, also, equity jurisprudence is not bare of a remedy in the prevention of unjust enrichment. The constructive trust, although essentially a remedial concept, has supplied the formula through which in a variety of harsh and unfair situations the conscience of equity finds expression.
But here it may be answered that the enrichment which a debtor may derive from the operation of the statute of limitations is not inimical to the public policy that recommends and sustains such statutes, and thus any resulting advantage therefrom to the debtor is not to be regarded as unjust or inequitable. Habitually in the consideration of strictly legal rights, courts of equity whether in voluntary obedience to or upon analogy recognized the limitations at law. For examples, if a legal title would, in ejectment, be barred by adverse possession of twenty years, courts of equity will respect the limitation. If a mortgagor has been in possession of the mortgaged premises for a like span of time without any acknowledgment of the debt, equity will presume that the mortgage indebtedness was paid. In the cases just hypothesized, can the State, despite the limitations, seize by escheat the lands subject to the consummated adverse possession or acquire and collect the mortgage for the reasons that the whereabouts of the record title holder of the land and in the latter case of the mortgagee has been unknown for a specified period of the past? Can the State now lawfully acquire by escheat every heretofore outlawed debt throughout its territorial jurisdiction and demand its payment free from the immunity bestowed upon the debtor by existing statutes and adjudications? Of course, it is not to be presumed that the State if it has such power will exercise it unwisely or arbitrarily. *Page 470 
My attention has been attracted to the section of our statute enacted in 1906 (R.S. 2:24-24, N.J.S.A.) relative to the amount of interest to be recovered on "any claim or demand which has been or shall become barred by the running of the statute of limitations, and shall have been or shall be revived thereafterby legislative enactment * * *." (Italics mine.) The citation is not influential because whatever may have been the contemplations of the Legislature, our Court of Errors and Appeals, for example, in Ballantine Sons v. Macken, 94 N.J.L. 502, 503, 110 A. 910, declared: "The rule is institutional and fundamental that a party who has become released from a demand, by the operation of the statute is protected against its revival by a change in the limitation law: the defense of the statute being considered a vested right, which cannot be taken away by legislation without violating the inhibition of the Fourteenth Amendment to the federal Constitution." (Perhaps more accurately, the right to acquire and possess property clause.)
It must be immediately recognized that all of our decisions with concordant import have denied the Legislature the opportunity constitutionally to revive as between private individuals the debt that has been extinguished by the applicable tolling of the statute of limitations. And so along most all of the passageways of thought concerning the effect of the limitation upon the rights of the private parties involved, we soon come upon the image of the vested right.
I frankly confess my inability to comprehend the power of the State to acquire by means of escheat vested rights of cognizable ownership as distinguished from abandoned rights and interests. The very spine of the doctrines of escheat and bona vacantia is composed of the constituent fact that no one exists who has ownership of the specified property.
It has been said that when you get half way into the woods, you then start coming out. And so, diverging now to pursue an excursive view of the subject, attention promptly focuses upon the proposition that although the defendant has acquired by statute a vested right and title to the intangible property to the exclusion of the unenforceable claims and demands of *Page 471 
the former owners who have been and are now incapable of ascertainment and identification, yet the defendant has not in such circumstances also achieved a vested right and title to the property immune from recovery by the State in the pursuit of its governmental power. To sustain that conclusion it is necessary to resolve that the statute of limitations invoked by the defendant had no current application to the ever extant and subsisting sovereign prerogative of the State, and that the tolling of the statute although effectual as hereinbefore indicated between the debtor and creditor was always subject and subordinate to the governmental right.
In the preliminary memorandum I quoted from my opinion inTrustees, etc., Public Schools v. Ott Brewer Co.,135 N.J. Eq. 174, 37 A.2d 832, the rule that a statute of limitation should not be construed to encircle the government unless it is manifest from the mischief to be reached, the express language employed or by necessary implication therefrom, that the government was in the contemplation of the Legislature. I do not understand that the defendant impugns that rule or its utilization in the consideration of the present proceeding, but it projects the contention that the right of the State to recover the debt or chose in action is derivative and that where as between the debtor and creditor the debt or cause of action has become extinct, nothing remains due the creditor to be captured by the State in pursuance of its undeniable power. But a perceivable refutation of that argument is a determination that the right of recovery by the State in a proceeding in the nature of escheat is distinguishable and independent of the rights of the individuals and that such isolated prerogative right did not become extinct. The contributing point is that the State acts initially as a conservator of the abandoned property, not as a party to a contract, and that the sovereign right cannot be demolished or suppressed by the acts of the individual debtors and creditors.
It is asserted that the power to escheat is prerogative in character and is inherent in the sovereignty of the people, and that it is not a creature of the Legislature. The impression is that the Escheat Act merely authenticates and regullates *Page 472 
the exercise of the power. The historical authorities indicate that the State had no common law proprietary interest in abandoned and unclaimed personal property. It is perhaps more accurate to identify the right of the State in such an undertaking as an exercise of the police power.
It is, however, in the course of this rationalization that the Deputy Attorney General places the possession of the alleged escheatable property in its relation to the prerogative right of the State in the equitable category of a quasi trust for the eventual surrender and delivery of the abandoned and unclaimed property to the public if and when proceedings to that end are authoritatively inaugurated by the State.
It seems entirely plausible to infer that the Legislature never intended that statutes of limitations of the import and tenor here invoked should in anywise abate the pursuit by the State of its sovereign power to escheat unclaimed and abandoned property. The public policy sustaining such statutes in their application to dealings between individuals is familiar. The duration of the limitational period is definitely appurtenant to the object of the enactment. Envisioning the power to escheat tangible and intangible personal property, our legislators were undoubtedly conscious of the relatively lengthy span of time the lapse of which would reasonably generate a presumption of abandonment and failure of ownership. The interrelation of the limitational period and the statutory object has always been comprehended.
And so it is advocated by the Deputy Attorney General that the State possesses a supreme right (subject only to the characteristic impediments applicable to the exercise of the police power) to salvage for the public welfare all unclaimed and abandoned debts and cognate obligations which under the verification of proof or confession it is evident that the debtors and obligors have not in fact discharged.
In this and in my associated preliminary memorandum I have intentionally endeavored to exhibit all of the courses and processes of reasoning, pro et contra, to which my deliberations have been directed relative to the foremost controversial point. Perhaps I have inordinately magnified its debatable substance *Page 473 
and too noticeably plowed the ground for ensuing cultivation in the appellate tribunals.
Where, however, the diversities of legal argumentation concerning the constitutionality of a statute and the exercise of a prerogative power in pursuance thereof approximate an equiponderance, it is in accord with recognized policy for the court to resolve the issue in favor of validity. I shall act accordingly in the determination of the aforesaid issue.
It is consequently unnecessary to discuss the application of the statute of limitations to the respective classes of intangible property here sought to be escheated.
I shall therefore proceed to consider the additional points presented for decision. I approach them with some precursory observations. The present action is essentially a proceedingquasi in rem in which the defendant company has filed an answer. No other claimant has sought to enter an appearance. Indeed, there is no proof of the existence of any other claimant. The admitted lack of knowledge of the whereabouts of any claimant during the specified period and the apparent abandonment of the designated property during a like span of time constitute under the Escheat Act a confirmatory presumption that there is no claimant.
If there is any such, he is privileged to proclaim his rights during the progress of this action and within two years succeeding the entry herein of the final judgment. The defendant protests that the right of the individual to make claim is reduced to a privilege dangling insecurely from the discretion of the court. In equity, remedies are nonetheless remedies because they are discretionary, and an abuse of discretion is not reasonably to be contemplated or condoned. A claimant has no vested right in a particular remedy if a substantial remedy remains or is substituted. Henderson v. Weber, 131 N.J.L. 299,301, 35 A.2d 609, appeal dismissed, 322 U.S. 713,88 L.Ed. 1555, 64 S.Ct. 1270.
The defendant corporation has successfully argued before me that where the statute of limitations has tolled, the chose in action against it has been extinguished. What then is the property right of an unknown claimant in the present case *Page 474 
(except the 12 shares of stock) that the defendant can with any propriety and practicability volunteer to protect against alleged unconstitutional invasion? I know not, unless the existence of the sovereign power to acquire abandoned and unclaimed property is controverted. The treatment and determination of the right of a claimant in respect to the escheat are subjects not now before this court.
The defendant is certainly free to defend its own rights. In my preliminary memorandum which is inhabited by most of the pertinent and authoritative citations, I have referred to such adjudications as Anderson National Bank v. Luckett,321 U.S. 233, 88 L.Ed. 692, 64 S.Ct. 599, and Security Bank v.California, 263 U.S. 282, 68 L.Ed. 301, 44 S.Ct. 108, which seem to me definitely to hold that if the prerogative power of the State is exercised under the authority of the Legislature and in accordance with adequate and reasonable statutory terms and requirements, and it is judicially determined in pursuance thereof that the State is lawfully entitled to the property which in the given case is comprehended by the designated class of escheatable property, the surrender and delivery of the property to the State discharges the obligation and liability of the defendant to the unknown claimants, and the legislation and the pursuit of its object are not in relation to the debtor and creditor violative of the contract and due process clauses of the constitution. To further allay the defendant's apprehensions of double liability, I point to R.S. 2:53-23.1, N.J.S.A.; R.S.
2:53-31, N.J.S.A.; Philadelphia Electric Company Case,352 Pa. 457, 43 A.2d 116.
Counsel for the defendant perhaps approve of the literal text of the preceding paragraph, but they complain that our regulatory statute fails to require reasonable and adequate notice to the unknown and unascertained claimants in consequence of which the defendant would not be released from double liability. Anent that criticism I previously remarked: "Frankly, I regard the impoverished provisions pertaining to the notice to be given as an infirmity in the act, but not a mortal one." I again invite attention to the relevant *Page 475 
comments contained in Anderson National Bank v. Luckett, supra;Security Bank v. California, supra; Hyman v. Muller, 1 N.J. 124, 62 A.2d 221. I was not unaware of the decision inWuchter v. Pizzutti, 276 U.S. 13, 72 L.Ed. 446,48 S.Ct. 259, 57 A.L.R. 1230, which seems to me to be irrelevant and inapplicable to the point here in question, for here it will be observed that the section of our Escheat Act (R.S. 2:53-21, N.J.S.A.), properly construed, requires the notice in its essentials to be "approved by the court," and requires it to be published "in a manner directed by the court." Procedural enactments relating to statutory judicial proceedings not uncommonly direct that notice, its contents and amplitude, shall be served or published as the court shall prescribe.
The act affords a claimant a day in court. The enactment in itself is an announcement to persons having property within the State of the conditions under which the specified classes of property will be presumptively deemed abandoned and subject to transfer to the State. Statutory proceedings relating to the seizure of property rights by the State in the interest of the public welfare which by later resort to the courts secure to the parties affected a suitable opportunity to be heard, do not deny due process. Anderson National Bank v. Luckett, supra.
There remains for consideration the additional overture that the alleged intangible personal property does not have a situs
in this State and therefore is not susceptive of seizure in this proceeding. For immediate interest the point must relevantly be reduced and confined to the consideration of the situs of abandoned intangible personal property of the particular character herein embraced in its relation to the power of this State to recover the property in circumstances evidenced by the stipulated facts.
It is acknowledged that the defendant attained its corporate origin and existence in this State and has continuously maintained its principal office in this jurisdiction at which its stockholders' meetings are regularly held and at which its registered agent may be found upon whom process is to be served in civil actions against the company. New Jersey is the defendant's habitation or domicile. *Page 476 
It is the general jurisdictional rule that debts, choses in action, and kindred claims are determined to be situate where the debtor or other person resides against whom the claim exists, that is, in the jurisdiction in which such choses and claims are properly enforceable and recoverable, regardless of the locations of the debtor's physical properties and of his major business activities. Amparo Mining Co. v. Fidelity Trust Co.,75 N.J. Eq. 555, 558, 73 A. 249; Pennington v. Fourth National Bank,243 U.S. 269, 61 L.Ed. 713, 37 S.Ct. 282; PhiladelphiaElectric Company Case, supra; 31 Harvard Law Review 905.
In an escheat proceeding such as this in which the residence, domicile, whereabouts and, indeed, existence of an owner of theres are unknown and the res is circumstantially presumed to be bona vacantia, the application of the general jurisdictional rule to the situs of an escheatable res within the class here described seems to be manifestly sensible, just, and pragmatical.
It is to be noticed that the opportunity afforded by our statute to obtain refunds from the State is available equally to nonresident and resident claimants.
Apparently the motive of the defendant in projecting this supplementary defensive argument is its imaginative apprehension that some other state may perchance some time in circumstances subsequently discovered undertake to escheat to itself the same property now to be awarded to New Jersey. The future, however wisely contemplated, remains a fairyland. The attempted solution of a preconceived legal problem of invisible characteristics is nothing more than a highly speculative and experimental exercise in which courts discreetly decline to indulge.
The United States Supreme Court in a like situation in its consideration of the New York Abandoned Property Law, stated: "The problem of what another state than New York may do is not before us. That question is not passed upon." Connecticut MutualL. Ins. Co. v. Moore, 333 U.S. 541, 548, 92 L.Ed. 863,68 S.Ct. 682, 690. In the same case Mr. Justice Frankfurter advocated the propriety of awaiting "the *Page 477 
ripening process of a defined contest," and until then to decline to "peck at the problem in an abstract, hypothetical way." I shall in this regard follow the footprints.
The judgment of this court will accordingly go in favor of the plaintiff.
Counsel are requested to compose and submit to me for approval a proposed final judgment declaratory of the conclusions herein expressed in their appropriate application to the circumstances of this case.