19 N.J. Super. 107 (1952)
88 A.2d 20
THE STATE OF NEW JERSEY, BY THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
OTIS ELEVATOR COMPANY, A CORPORATION, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 3, 1952.
*108 Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Aaron Van Poznak, attorney specially appointed by the Attorney-General for prosecution of the above case, appearing), attorney for the State.
Messrs. Pitney, Hardin & Ward (Mr. Robert P. Hazlehurst, Jr., appearing), attorney for the defendant.
GOLDMANN, J.S.C.
Defendant requested allowance of counsel fees and costs in this escheat action brought pursuant to the provisions of L. 1946, c. 155, as amended; N.J.S.A. 2:53-15 et seq., contending there was ample authority for such allowance under both the statute and the rules of court. Plaintiff opposed the application and it was denied. Defendant intends to appeal; this memorandum gives the reasons for the denial.
At common law the doctrine of escheat was associated with real property. It was an incident of tenure and related to the reversionary right of the lord to take for want of a tenant. What was originally an incident of tenure eventually became an incident of sovereignty. In re Melrose Ave., 234 N.Y. 48, 136 N.E. 235 (Ct. Apps. 1922). It would appear, however, that the doctrine of escheat did not in early times extend to personalty; the state had no common-law proprietary interest in abandoned and unclaimed personal property. State v. Standard Oil Co., 2 N.J. Super. 442, at p. 456; 5 N.J. Super. 460, at p. 472 (Ch. Div. 1949). With the passage of time, the doctrine came to be extended to *109 such personalty, tangible and intangible. Id., 5 N.J. 281, at p. 297 (1950).
The United States Supreme Court, on appeal in the Standard Oil case, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078, said (at pp. 435-6 of 341 U.S.):
"We need not consider whether a state possesses inherent power for such [escheat] legislation as to personalty as the successor to a prerogative of royal sovereignty.
As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons. Such property thus escapes seizure by would-be possessors and is used for the general good rather than for the chance enrichment of particular individuals or organizations."
The New Jersey Legislature first asserted the sovereign power to obtain dominion over and dispose of abandoned and unclaimed personal property by the passage of the 1946 law. (N.J.S.A. 2:53-15 et seq.). That act (and its amendments) is complete in itself and sui generis. It sets up a complete procedure. Jurisdiction in escheat actions, originally granted to the old Court of Chancery (L. 1946, c. 155, sec. 4), is now vested in the Chancery Division of the Superior Court (L. 1951, c. 304, sec. 2; N.J.S.A. 2:53-18). Proceedings are instituted, as in this case, by petition in the name of the State, "filed by the Attorney-General or by such attorney or counsellor-at-law as he may designate," N.J.S.A. 2:53-21. This section, and those that follow, detail the procedure.
N.J.S.A. 2:53-23 provides that before depositing the proceeds of escheated personal property turned over to him pursuant to final judgment, the State Treasurer "shall deduct therefrom five per centum" and pay the same to the escheator (appointed pursuant to N.J.S.A. 2:53-19) "as a reward." Further, the court "shall, in its final decree [judgment], fix the fees and expenses of the attorney or counsellor who shall have prosecuted the escheat * * *." The State Treasurer is directed to deduct these fees and *110 expenses from the moneys received by him or realized from the sale of the personal property.
The Escheat Act makes no similar provision for the payment of fees and expenses of the attorney who defended the action. Nor can such allowance be implied, as defendant contends, from the language of N.J.S.A. 2:53-23 which, after directing the State Treasurer to pay the escheator his "reward," goes on to state that he "shall pay such other fees and costs as the decree [judgment] shall direct." This clause can only refer to such fees and costs as the court is empowered to make under the act. It obviously relates to the paragraph immediately following which provides for the payment of the fees and expenses allowed in the final judgment to the attorney prosecuting the escheat action.
The act not only does not provide for fees and costs to the defendant, but expressly provides that the court may impose "costs or counsel fees against a defendant where such defendant shall be found by the court to have defended the escheat proceedings without reasonable cause or justification." N.J.S.A. 2:53-25.
Plaintiff, in opposing defendant's application for counsel fees and expenses, argues that escheat of unclaimed and abandoned personal property is a creature of statute; that the court sits as a special tribunal only, and therefore cannot allow fees and expenses to a defendant where the statute is silent on the subject. In re Prudential Insurance Co., 82 N.J. Eq. 335 (E. & A. 1913); In re Roebling, 91 N.J. Eq. 72 (E. & A. 1919); In re Janssen Dairy Corp., 2 N.J. Super. 580 (Law Div. 1949); Bergen County Sewer Authority v. Borough of Little Ferry, 7 N.J. Super. 213 (App. Div. 1950), 5 N.J. 548 (1950).
The Janssen Dairy Corp. case dealt with an application for the payment of interest, costs and counsel fees against the corporation, in behalf of dissenting stockholders who had applied for an appraisal of their stock. The petitioners argued that Rules 3:54-6 and 3:54-7, as they then read (March, 1949), dealing with costs and counsel fees, applied. *111 After noting that the proceedings were purely statutory and that the rules did not apply, the court said (at pp. 586):
"Our duty to hold strictly to the legislative authority delegated to us impels the conclusion that the most liberal construction of the statutory language cannot justify the implication of obligations upon the consolidated corporation either to pay interest or to pay all the costs and expenses of the proceeding. Nor in our view does the statute give us discretion to impose them upon the corporation."
Defendant can find no support for its request for allowances in the Escheat Act. However, it also grounds its application on Rule 3:54-7(b), last amended on December 7, 1950. It argues there is a fund in court and therefore counsel fees and expenses may be allowed it. It may be observed that in the course of his argument, counsel for defendant completely shifted the emphasis from statute to rule as a proper basis for the allowance.
Winberry v. Salisbury, 5 N.J. 240 (1950) established the supremacy of the rules of court in the area of practice and procedure. Driscoll v. Burlington-Bristol Bridge Company, 8 N.J. 433, 495 (1952), but recently decided, held that the allowance of fees is a matter of procedure governed by rule of court. Quaere: the Escheat Act being sui generis and this action a statutory one, does Rule 3:54-7(b) apply?
In denying defendant's application, the court assumed that the rule did apply. There was a fund in court. Cintas v. American Car & Foundry Co., 133 N.J. Eq. 301 (Ch. 1943), affirmed 135 N.J. Eq. 305 (E. & A. 1944). The purpose of the Attorney-General in bringing the action in behalf of the State was, of course, "to create or preserve a fund for the benefit of a class"  the people of New Jersey. The potentially escheatable property in the hands of the defendant was the subject of the litigation, and the sole purpose of the proceeding was to determine the disposition of that property. The control of the court over the fund was established at the outset by its personal jurisdiction over the defendant. Simultaneously with the filing of the complaint, an order was entered requiring the defendant "to retain in its *112 custody or possession such escheatable personal property as it now has in its custody or possession until further order of this court." Control was necessary to the court's effectuating the escheat. The situation here is therefore quite unlike the Driscoll case which held that there was no fund in court.
Allowance of counsel fees and expenses to defendant lies in the court's discretion. The proceeds derived from escheat proceedings are to be preserved for the use of the State, in as full a measure as possible. In recent years the states have increasingly entered the escheat field in search of revenues. The action taken by our Legislature in 1946 was clearly for that purpose. The Legislature was willing to provide compensation for the work done by escheators and attorneys specially appointed to prosecute the escheats, but it very pointedly failed to make similar provision for counsel for the defendant. The court cannot help but note the practical and positive pattern of the legislative thinking.
The defendant was undoubtedly put to a good deal of time and trouble in preparing the information called for by the State, in court appearances, and especially in connection with a claim filed to a major part of the escheated stock. However, it cannot look to the court to deplete the proceeds derived through this escheat in order to pay its expenses and counsel fees. The precedent would not be without its mischief. There are other defendants who would be inspired, short of opposing escheat proceedings "without reasonable cause or justification" (N.J.S.A. 2:53-25), to a show of legal activity reminiscent of certain phases of the former practice  pleadings in volume, successive court appearances, "conferences," correspondence, and all the rest  which would bring in train the inevitable and lengthy affidavit of services. The State would be asked to pay the bill. Such practice is not to be encouraged.