29 N.J. Super. 439 (1954)
102 A.2d 778
ALFRED POMEROY, INDIVIDUALLY AND AS A CO-PARTNER OF SELWYN-POMEROY CO., A PARTNERSHIP, SAUL FISCHBEIN AND KARL GREEN, PLAINTIFFS-RESPONDENTS,
v.
HARRY SIMON, ARTHUR J. SIMON, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1953.
Decided February 3, 1954.
*440 Before Judges JAYNE, FRANCIS and SMALLEY.
Mr. Max L. Rosenstein argued the cause for appellants.
Mr. Adrian M. Unger argued the cause for respondents (Messrs. Milton M. and Adrian M. Unger, attorneys; Mr. Sam Denstman, on the brief).
*441 The opinion of the court was delivered by JAYNE, S.J.A.D.
A brief introductory statement is essential to elucidate the nature of this action, its subject, and the controversial issues presented to us for determination. The defendant Tho-Ro Products, Inc. is a New Jersey corporation engaged in the manufacture of plastic sheets from which synthetic buttons are stamped at Carlstadt, Bergen County. The defendant Irving Thor is the holder of 17 1/2 shares of the common stock of the corporation and an officer and director. The defendant Harry Simon, the owner of 24 2/3 shares of the common stock and 88 8/9 shares of the preferred stock, is the president and the surviving voting trustee. The defendants Arthur J. Simon and Edward H. Simon are sons of Harry Simon, and each is the owner of five shares of the common stock.
The Harry Simon, Arthur J. Simon, Edward H. Simon previously mentioned and Helen Simon are also all the members of a partnership trading in the City of New York under the name and style of Eagle Button Company. They are non-residents of this State maintaining their residences in the State of New York. The plaintiffs are the holders of a majority of the shares of both the common and preferred stock of the corporation. They also are non-residents of this State.
On or about June 9, 1949 a written agreement was executed on behalf of the corporation and by the partners comprising Eagle Button Company by the terms of which the partnership engaged to act as agent in the promotion of the sale of the buttons produced by the corporation and to receive compensation for such service at a figure equivalent to 20% of the sales consummated by the partnership. The nativity of this sales agreement and the eventualities in the pursuance of it constitute the core of the discord between the plaintiffs and the defendants.
An antecedent action was instituted and is pending implicating substantially the same subject matter, to which action it is unnecessary to allude except to indicate the lack of proper parties thereto and the endeavors of the plaintiffs to *442 have the controversial issues heard and determined in this jurisdiction.
On May 11, 1953 an affidavit of the plaintiff Saul Fischbein was presented to Judge Grimshaw of the Chancery Division. The deponent therein stated, inter alia:
"3. Said individual defendants and said partnership are non-residents of this state and reside in New York. Summons cannot be served upon them in this state.
4. The nature and particulars of said cause of action are as follows:
a. The defendant Harry Simon is not only the dominant and controlling partner in Eagle, but is also the president and one of the directors and the surviving trustee of Tho-Ro.
b. On or about June 9, 1949 the individual defendants as partners trading as Eagle Button Co. purportedly entered into a written agreement wherein and whereby it was agreed that Eagle Button Co. would act as the sales agent for buttons produced by Tho-Ro and should be compensated at the rate of 20% of the sales made by it of such buttons. The contract was purportedly entered into pursuant to a resolution of the directors of Tho-Ro authorizing the making of such a contract for a period not to exceed three years.
c. At or about the time of the incorporation of Tho-Ro, the defendant Harry Simon, who was and is President of Tho-Ro, knowingly made false, misleading and fraudulent misrepresentations to the other officers and directors of Tho-Ro with the intent that they rely thereon in order to induce them and Tho-Ro to enter into a sales agency agreement with Eagle for the sale of Tho-Ro's buttons at grossly excessive rates to Eagle. These misrepresentations and statements consisted of misrepresenting the cost of operating a sales organization for the sale of Tho-Ro's buttons, Simon misrepresenting that the cost would approximate 26% of the sales volume but that he, through Eagle, would operate such an organization at 20% which would merely meet the cost of Eagle in connection therewith without any profit to Eagle or Simon.
d. Said representation was false in that the cost to Eagle of operating a sales organization was far less than 20% of sales volume. Said representation was known by the defendant Harry Simon to be false when made by him on behalf of Eagle, and it was made by him with the intention that Tho-Ro should rely upon it, all in violation of and in breach of the said Simon's duties and obligations as a director of Tho-Ro. Said representation, false as aforesaid, was relied upon by Tho-Ro to its damage in that it entered into the agreement aforesaid, whereby the said Simon and the other defendants comprising the Eagle Button Co. partnership have been enabled to make unconscionably high profits to the detriment of Tho-Ro and its stockholders.
*443 e. Notwithstanding that said sales agreement requires the expense of effecting sales and furnishing samples of the buttons to be borne by Eagle, defendant Harry Simon caused Tho-Ro to pay certain costs and expenses of sales made by Eagle and caused Tho-Ro to furnish at its own expense certain samples of its buttons.
f. The defendant Harry Simon has converted to his own use or to the use of himself and his co-partners in the Eagle Button Company 40,000 gross of buttons, the property of Tho-Ro, without payment of compensation therefor.
g. The defendant Harry Simon has taken from the assets of Tho-Ro commissions for himself and his co-partners in the Eagle Button Company commissions for them on sales of items other than buttons in violation of said sales agreement.
h. The foregoing enumeration is not intended to be inclusive of all of the acts of fraud, misrepresentation, dereliction, double dealing, misconduct, and illegal and improper competition with Tho-Ro, which, it is alleged, Harry Simon, Arthur J. Simon, Edward H. Simon and Helen Simon, individually and as partners trading as Eagle Button Company, have committed. In addition thereto, the sales agency agreement has expired, but the Simons and Eagle Button Company have, through their position of dominance, continued to operate and pay themselves exorbitant commissions thereunder.
i. By virtue of the said sales agreement and the acts done pursuant thereto and under color thereof, the defendant co-partners have wrongfully taken and received assets of Tho-Ro, which, on information and belief, amount to or are valued at $250,000.
j. Said sales agreement, fraudulently procured as aforesaid, should be declared null and void and rescinded, and the defendant co-partners should be compelled to account for and pay over to Tho-Ro all monies and things value of Tho-Ro wrongfully taken and received by them.
k. The defendant Harry Simon, by virtue of his offices as President and director of Tho-Ro and as voting trustee under a purported voting trust agreement, executed with its stockholders, has arrogated unto himself the control and management of the affairs of the corporation. He will not seek redress of the foregoing grievances, and plaintiffs have made many efforts to secure action from the controlling directors of said corporation but they have refused to do so. Accordingly, it is necessary for plaintiffs, who represent a majority of the outstanding stock, to institute this suit to accomplish the results sought. The board of directors, when last elected, consisted of Harry Simon, Irving Thor, Karl Green and Sydney Selwyn. Due to the induction of Karl Green in military service and the death of Sydney Selwyn, the presently acting board of directors consists of Harry Simon and Irving Thor, plus David Green, father of Karl Green, who has been so designated by order of the Superior Court of New Jersey, Chancery Division, in a matter now pending therein entitled Karl Green, et als., v. Tho-Ro Products, Inc., et als. (Docket No. C-1446-51.) Tho-Ro is therefore joined as a defendant in this suit."
*444 In pursuance of the affidavit the judge authorized the issuance of a writ of attachment against the rights and credits, moneys and effects, goods and chattels and real estate in this State of the defendants Harry Simon, Arthur J. Simon, Edward H. Simon, and Helen Simon, individually and as partners trading as Eagle Button Co., a partnership of New York. The writ was issued, levies were made thereunder, the plaintiffs' complaint and notice of the attachment were filed, and service of copies of the complaint and notice acknowledged by the attorney of the defendants with a reservation of the right to move to vacate and nullify the writ of attachment.
The defendants, as contemplated, thereafter made application for an order quashing the writ of attachment, for the discharge of the levies, and for the dismissal of the action. The following reasons were asserted in aid of the motion:
"(1) That the court was without jurisdiction to make the order authorizing the issuance of the writ of attachment.
(2) That the order authorizing the issuance of the writ of attachment was contrary to and in violation of the statutes of New Jersey relating to attachments, R.S. 2A:26-1, et seq.
(3) That the affidavit upon which the order granting the writ of attachment was issued and the complaint of the plaintiffs fails to set forth a cause of action cognizable under the statute, R.S. 2A:26-1, et seq.
(4) That the issuance of the writ of attachment against the defendant Arthur J. Simon was contrary to the statute, R.S. 2A:26-5.
(5) Upon the ground that the affidavit upon which the order granting the writ was issued, as well as the complaint of the plaintiffs in this cause, fails to set forth the relationship of debtor and creditor as between the plaintiffs and the defendants, and that in the absence of such relationship the making of the order granting the writ and the issuance of the writ were contrary to law, the Court being devoid of jurisdiction.
(6) That the proceedings are void ab initio, in that it appears upon the face of the affidavit upon which the order granting the writ was issued, and from the complaint of the plaintiffs in this cause, that no right of attachment existed under the statute in such cases made and provided.
(7) That the plaintiffs are not the true parties in interest and failed to disclose a true party in interest, and that such failure was contrary to and in violation of Rule 3:17-1 of the rules of this Court.
(8) That the true party in interest, Tho-Ro Products, Inc., could not obtain a writ of attachment upon the facts set forth in the affidavit *445 upon which the order granting the writ was made or the facts set forth in the complaint in this cause, and that by reason thereof the Court was without jurisdiction to make the order granting the writ.
(9) That the alleged cause of action in the affidavit upon which the order granting the writ was made and the writ issued, and the complaint herein filed, upon the face thereof state an alleged cause of action in the nature of a derivative suit, under which no writ of attachment could issue under the statute authorizing the issuance of writs of attachment in New Jersey.
(10) That the plaintiffs are not in this Court with clean hands, and this suit constitutes an abuse of process.
(11) Upon such other grounds as to the Court may seem just and proper."
The present appeal is addressed to the propriety of the order denying the motion to quash the writ and to dismiss the action. Initially counsel for the plaintiffs discredit the right of the defendants, especially without express leave first obtained, to prosecute the appeal. Vide, Mueller v. Seaboard Commercial Corp., 5 N.J. 28 (1950), and also R.R. 4:88-7. Because of the somewhat exceptional characteristics of the proceedings to which reference will presently be made, leave to appeal, had it been sought, would probably have been granted. We have resolved to overpass the point and to dispose of the substantive questions on the merits. They have been fully debated by counsel. Cf. Original R. & R. Pickle Works v. G. Arrigoni & C., etc., 28 N.J. Super. 405 (App. Div. 1953).
In recognizing the scope of the defendants' motion here under consideration it is appropriate to observe both the factual ingredients of the affidavit and the theme of the cause of action alleged in the complaint.
Basically it is critical to perceive the allegations of paragraph 12 of the complaint:
"12. Plaintiffs bring this suit on behalf of themselves and all other stockholders and on behalf of Tho-Ro, which is made a party defendant, because defendants Harry Simon and Irving Thor, as controlling directors, have failed and refused, and will continue to fail and refuse, to institute or join in this suit or take action necessary to protect the rights of Tho-Ro and its stockholders, despite written demand therefor and suit to that end by plaintiffs. Any *446 further demands to the Board of Directors to bring this action would be futile. Thor is also made a defendant so that all stockholders, officers and directors of Tho-Ro will be parties hereto or represented herein."
Next in significance to the allegations of the wrongful conduct of the principal defendants are the remedies sought by the plaintiffs. We quote from the prayer of the complaint:
"A. That defendants Harry Simon, Arthur J. Simon, Edward H. Simon and Helen Simon, individually and as partners trading as Eagle Button Company, be required to account to Tho-Ro Products, Inc. and to its stockholders for all sums of money and property of said corporation which they have wrongfully diverted, withdrawn or permitted to be diverted or withdrawn and taken therefrom and that they be required to pay over and deliver to said corporation such sums and property as in said accounting may be found to be due to said corporation.
B. That this court construe and interpret the terms and conditions of the purported sales agency agreement between the defendant corporation and Eagle Button Company to the end that this court declare the rights and obligations of the parties and that it is no longer in force and effect.
C. That this court declare that the purported sales agreement between the defendant corporation and Eagle Button Company should be cancelled, annulled and set aside by reason of the overreaching fraud and misrepresentation of the defendant Harry Simon, acting for and on behalf of the partners in Eagle Button Company, and by reason of the violation of his and their fiduciary responsibilities and obligations.
D. That defendants Harry Simon, Arthur J. Simon, Edward H. Simon and Helen Simon, individually and as partners trading as Eagle Button Company, be required to pay to defendant corporation $250,000 as damages for their wrongful and illegal conduct.
E. That judgment be entered against Harry Simon, Arthur J. Simon, Edward H. Simon and Helen Simon, individually and as partners trading as Eagle Button Company, for the amount found to be due to the corporation." (Italics supplied.)
And so at the inception of our deliberations we regard it to be of fundamental importance to recognize the intrinsic nature and characteristics of the alleged cause of action. Manifestly it is a representative or derivative action. While the corporation is nominally a defendant, it is in reality the plaintiff, since the action is expressly declared to be *447 prosecuted for its benefit and only indirectly for the advantage of the plaintiffs and other stockholders. Slutzker v. Rieber, 132 N.J. Eq. 412 (Ch. 1942), with the citations therein. Assuredly the cause of action and the recovery, if any, belong primarily to the corporation. To resolve otherwise would tend to exalt form over substance, a policy upon which modern law deeply frowns.
Secondly, it is to be noticed that the basic claim asserted on behalf of the corporation and the remedies sought are of an equitable nature as to which a money judgment is demanded against the individual defendants upon whom process of summons cannot be personally served in this State.
The writ was utilized to attach such credits as were then due and owing by the corporation to the partnership. The corporation is a corporate entity of this State. Consequently the following questions arise for determination. Does the corporation occupy the position and status of the plaintiff in the action? If so, is its alleged claim of an equitable nature? Those questions we resolve to answer in the affirmative.
Counsel for the defendants nonetheless insists that in the circumstances the issuance of the writ of attachment was unwarranted and unauthorized by our existing law. We are consequently induced to comment upon the legislative genealogy of our present statute relating to attachments. N.J.S. 2A:26-1 et seq. It is conspicuously the heir apparent of the Attachment Act of 1901 (R.S. 2:42-1 to 71), the Practice Act of 1903 (R.S. 2:42-72 to 85), and the legislation concerning sequestration in the former Court of Chancery (R.S. 2:29-88 to 109).
The Legislature expressly announced its intention that the statute "shall be liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants." N.J.S. 2A:26-1. Indeed, the noticeable changes in the diction and phraseology of its comparable articles and sections to those of the former legislation are demonstrable of that intention. Equally manifest is the pragmatical intent to adjust and amalgamate in the one *448 statute the provisions relating to the attachment of real and personal property as an incident to the reorganization of our courts.
The statute concerning the sequestration of property of nonresident defendants in our former Court of Chancery stated:
"This article is remedial, provides additional remedies, and shall be liberally construed to effect its purpose, which is to subject the property of nonresidents to the satisfaction of claims cognizable in a court of equity in analogy to attachment proceedings at law." L. 1919, p. 447, suppl. L. 1902, p. 510; R.S. 2:29-88.
The statute provided that:
"In any proceeding commenced in the court of chancery in which a money decree is prayed against a defendant, and it shall be made to appear, by affidavit, that the defendant is a nonresident and has property, real or personal, moneys, effects, rights or credits within this state, the court may * * * issue its writ or writs of sequestration * * *." R.S. 2:29-89. (Emphasis ours.)
We quote the comparable and related paragraphs of our present statute:
"An attachment may issue out of the superior court * * * upon the application of any resident or nonresident plaintiff against the property, real and personal, of any defendant in any of the following instances:

* * * * * * * *
d. Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant absconds or is a nonresident and a summons cannot be served upon him in this state." N.J.S. 2A:26-2. (Again emphasis ours.)
A corporate stockholders' derivative action is the creature of equity. The alleged wrongful double dealing of the defendant Harry Simon for the financial benefit of his partnership and to the financial disadvantage of the corporation of which he has been and is president and the surviving voting trustee implicates duties of a fiduciary character, and the claim of the corporation for a monetary recovery of its consequential loss is, in our opinion, a claim of an equitable *449 nature intended to be embraced by subdivision "d" of N.J.S. 2A:26-2. It is unnecessary in the present case for us to delineate the boundaries of subdivision "b."
In determining that the New Jersey corporation is to be regarded as the real plaintiff in this action, the contention of the defendant Arthur Simon that the wages due him as a nonresident employee cannot be attached by nonresident creditors likewise fails.
We also conclude in accordance with the general jurisdictional rule that the situs of the alleged indebtedness of the defendants comprising the Eagle Button Company to the corporation is in this State. State v. Standard Oil Co., 5 N.J. Super. 460, 476 (Ch. 1949), modified 5 N.J. 281 (1950), 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078, 1087; 4 Am. Jur. 589, 598.
The order under review is affirmed.